Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL IX

| | | |
|---|---|---|
| FIRSTBANK PUERTO RICO<br><br>Recurrido<br><br><br>v.<br><br><br>JORGE CARLO SÁNCHEZ MARCHOSKY<br><br>Peticionario | TA2026CE00109 | *CERTIORARI* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso número: SJ2017CV03009<br><br>Sobre: Ejecución de Hipoteca – Ordinaria |

Panel integrado por su presidenta, la juez Brignoni Mártir, el juez Salgado Schwarz y la juez Aldebol Mora.

Aldebol Mora, Juez Ponente

## RESOLUCIÓN

En San Juan, Puerto Rico, a 13 de febrero de 2026.

Comparece el peticionario, Jorge Carlo Sánchez Marchosky, mediante el recurso de epígrafe y nos solicita que revoquemos una *Orden* emitida y notificada el 29 de diciembre de 2025 por el Tribunal de Primera Instancia, Sala Superior de San Juan. Mediante esta, el foro primario dejó sin efecto una orden de paralización por quiebras decretada previamente ese mismo día y ordenó la continuación de los procedimientos post sentencia en el caso.

Por los fundamentos que se exponen a continuación, se deniega la expedición del auto de *certiorari*.

### I

El 26 de diciembre de 2017, FirstBank Puerto Rico (FirstBank o parte recurrida) incoó una *Demanda* por cobro de dinero y ejecución de hipoteca, en contra de Jorge Carlo Sánchez Marchosky (Sánchez Marchosky o el peticionario).[1] Como remedio, FirstBank

---

[1] Entrada núm. 1 del caso núm. SJ2017CV03009 del Sistema Unificado de Manejo y Administración de Casos (SUMAC).

reclamó del peticionario el pago de $126,480.42, así como la ejecución de la hipoteca que grava el inmueble a que se hace referencia en la *Demanda* de epígrafe.

Luego de una serie de incidencias procesales, el 18 de septiembre de 2024, el foro primario emitió una *Sentencia*, que fue notificada al día siguiente.[2] Mediante esta, el foro primario declaró Ha Lugar una mocion de sentencia sumaria presentada por FirstBank. En consecuencia, le ordenó a Sánchez Marchosky satisfacer el pago de la cuantía reclamada por Firstbank en la *Demanda* de epígrafe, así como la ejecución de la hipoteca.

Así las cosas, tras un trámite y en lo pertinente al caso de epígrafe, el 22 de julio de 2025, el peticionario presentó una *Urgente Moción Solicitando Paralización de los Procedimientos*.[3] En síntesis, informó que se había acogido a un proceso de quiebras. Por consiguiente, al tratarse de campo ocupado federal y de conformidad con la legislación aplicable, adujo que procedía la paralización inmediata de los procesos. Tras considerar lo informado por Sánchez Marchosky, el 23 de julio de 2025 el foro *a quo* emitió la siguiente *Orden*: "Enterado, tome conocimiento parte demandante".[4]

Por su parte, el 5 de agosto de 2025, FirstBank instó una *Moción Solicitando la Continuación de los Procedimientos*.[5] Mediante esta, notificó que la solicitud de quiebras instada por el peticionario había sido desestimada, por lo que solicitó se reanudaran los procedimientos post sentencia en el caso. Ese mismo día, el foro primario emitió una *Orden* en la que ordenó la continuación de los procesos.[6]

---

[2] Entrada núm. 180 del caso núm. SJ2017CV03009 del SUMAC.
[3] Entrada núm. 214 del caso núm. SJ2017CV03009 del SUMAC.
[4] Entrada núm. 215 del caso núm. SJ2017CV03009 del SUMAC.
[5] Entrada núm. 217 del caso núm. SJ2017CV03009 del SUMAC.
[6] Entrada núm. 218 del caso núm. SJ2017CV03009 del SUMAC.

El 9 de octubre de 2025, Sánchez Marchosky presentó una *Urgente Oposición a Subasta en el Caso de Epígrafe.*[7] En esta ocasión, reiteró que no procedía ejecutar la sentencia, ni vender en subasta pública la propiedad objeto de litigio. Sobre el particular, razonó que su solicitud de quiebra aún no había advenido final y firme, por lo que entendía que el caso de epígrafe debía continuar paralizado.

Al día siguiente, FirstBank compareció.[8] En virtud del escrito presentado, contradijo la postura del peticionario. En específico, adujo que, a raíz de la desestimación de la petición de quiebras instada por Sánchez Marchosky, esta había advenido final y firme.

Posteriormente, ambas partes se allanaron a que el caso se mantuviese paralizado, en lo que el Tribunal Supremo atendía un recurso de *certiorari* instado por el peticionario. Luego, el 13 de octubre de 2025, el peticionario presentó un escrito en el cual expresó que su solicitud de quiebras no se desestimó en los méritos, sino por razones administrativas.[9] Basado en eso, informó que solicitó oportunamente la reapertura de su caso de quiebras, así como enmendar su plan de quiebras, lo cual incluía solicitar la alternativa de venta corta, entre otras gestiones.

El 19 de noviembre de 2025, la parte recurrida presentó una *Moción Solicitando la Continuación de los Procedimientos.*[10] Mediante esta, reiteró su postura de que la desestimación de la petición de quiebras de Sánchez Marchosky advino final y firme y que procedía reanudar los procedimientos en este caso. Tras considerar esta solicitud, el 20 de noviembre de 2025 el foro primario ordenó la continuación de los procedimientos.[11]

---

[7] Entrada núm. 224 del caso núm. SJ2017CV03009 del SUMAC.
[8] Entrada núm. 225 del caso núm. SJ2017CV03009 del SUMAC.
[9] Entrada núm. 229 del caso núm. SJ2017CV03009 del SUMAC.
[10] Entrada núm. 233 del caso núm. SJ2017CV03009 del SUMAC.
[11] Entrada núm. 236 del caso núm. SJ2017CV03009 del SUMAC.

En desacuerdo, el 26 de noviembre de 2025, el peticionario solicitó reconsideración.[12] Ese mismo día, el foro *a quo* emitió una *Orden*, que notificó el 1 de diciembre de 2025, en virtud de la cual le concedió al peticionario hasta el 10 de diciembre de 2025 para evidenciar su alegación en torno al proceso de quiebras.

Así, debido a que Sánchez Marchosky no presentó la evidencia requerida, el 10 de diciembre de 2025, el foro primario ordenó la continuación de los procedimientos.[13] Insatisfecho con esta orden, el 24 de diciembre de 2025, el peticionario volvió a solicitar reconsideración y, en esta ocasión, presentó la evidencia que el foro primario le había requerido.[14] En consecuencia, el 29 de diciembre de 2025, el foro *a quo* emitió y notificó una *Orden*, mediante la cual reconsideró y decretó la paralización de los procedimientos ante sí.[15]

Luego de emitida la orden en reconsideración, el 29 de diciembre de 2025, FirstBank presentó un escrito de oposición a la solicitud de reconsideración que había instado el peticionario, y que el foro *a quo* acogió.[16] En lo pertinente, adujo que, una vez se desestima una petición de quiebras, el deudor no queda cobijado por la paralización automática. Asimismo, expuso que, de todos modos, la solicitud de reconsideración que Sánchez Marchosky presentó ante el Tribunal de Quiebras había sido denegada.

Finalmente, y en consideración a lo planteado por la parte recurrida, el 29 de diciembre de 2025, el foro primario emitió y notificó una segunda *Orden*, que es la aquí recurrida.[17] En esta ocasión, el foro *a quo* dispuso como sigue:

> Habiéndose presentado evidencia de que la moción de reconsideración fue denegada, se deja sin efecto la paralización decretada en otra orden de hoy.

---

[12] Entrada núm. 237 del caso núm. SJ2017CV03009 del SUMAC.
[13] Entrada núm. 240 del caso núm. SJ2017CV03009 del SUMAC.
[14] Entrada núm. 241 del caso núm. SJ2017CV03009 del SUMAC.
[15] Entrada núm. 242 del caso núm. SJ2017CV03009 del SUMAC.
[16] Entradas núm. 243 y 244 del caso núm. SJ2017CV03009 del SUMAC.
[17] Entrada núm. 245 del caso núm. SJ2017CV03009 del SUMAC.

En consecuencia, se ordena reanudar los procedimientos pos[t] sentencia del caso.

Inconforme, el 28 de enero de 2026, el peticionario acudió ante nos mediante el recurso de epígrafe, en el que adujo que el foro *a quo* cometió los siguientes errores:

Erró y abusó de su discreción el foro de instancia al revertir su orden de paralización de este caso por la quiebra de la parte recurrente, aduciendo que la "Motion to Reconsider" de dicha parte ante el tribunal de quiebra fue denegada y procedió a autorizar la continuación de los procedimientos en este caso, cuando la denegatoria de dicha moción a nivel federal no concluye el procedimiento de quiebra de la parte recurrente, dado que esta tiene derecho a apelar dicha determinación.

Erró y abusó de su discreción el foro de instancia al autorizar la continuación de los procedimientos en este caso, usurpando así la jurisdicción federal, cuando el proceso de quiebra de la parte recurrente no ha culminado, no ha advenido final y firme y cuenta con la alternativa en derecho de apelar. Por lo tanto, la orden del foro de instancia autorizando la continuación de los procedimientos en este caso es nula.

Tras una evaluación preliminar del recurso de epígrafe, el 29 de enero de 2026, emitimos una *Resolución*, que fue notificada al día siguiente. En virtud de esta, le concedimos a la parte recurrida un término de diez (10) días para presentar su posición en cuanto a los méritos del recurso.

Finalmente, el 6 de febrero de 2026, FirstBank presentó una *Moción en Cumplimiento con la Resolución dictada el 30 de enero de 2026* [...]. Esencialmente, adujo que no procede la expedición del auto discrecional solicitado por el peticionario. En su comparecencia, la parte recurrida razonó que el peticionario ya había esbozado planteamientos similares ante el Tribunal Supremo, los cuales fueron oportunamente rechazados por el Alto Foro de manera categórica. En síntesis, enfatizó que Sánchez Marchosky ha procurado inducir a error a este Foro, respecto a la ley aplicable a la paralización automática en casos de quiebra que han sido

desestimados, aún si la desestimación no fuese final y firme, a pesar de que en este caso lo es desde el 13 de agosto de 2025.

Con el beneficio de la comparecencia de las partes, procedemos a disponer del recurso de epígrafe.

## II

El *certiorari* es un recurso extraordinario mediante el cual un tribunal de jerarquía superior puede revisar discrecionalmente una decisión de un tribunal inferior. *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194 (2023); *Torres González v. Zaragoza Meléndez*, 211 DPR 821 (2023); *Caribbean Orthopedics v. Medshape et al.*, 207 DPR 994, 1004 (2021). En lo sustantivo, se le considera un recurso extraordinario, mediante el cual un foro revisor está facultado para enmendar los errores que cometió el foro revisado, cuando "el procedimiento adoptado no esté de acuerdo con las prescripciones de la ley". Artículo 670 del Código de Enjuiciamiento Civil, 32 LPRA sec. 3491.

En cuanto al aspecto procesal de este recurso extraordinario, la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1 codifica la revisión de los dictámenes interlocutorios del Tribunal de Primera Instancia. Sin embargo, y a pesar de que la citada regla no lo contempla, el Tribunal Supremo ha expresado que el *certiorari* también es el vehículo procesal adecuado para solicitar la revisión de resoluciones y órdenes post sentencia. Véase, *Banco Popular de Puerto Rico v. Gómez Alayón*, 213 DPR 314, 336-337 (2023); *IG Builders et al. v. BBVAPR*, 185 DPR 307, 339 (2012).

En cualquiera de estos escenarios, es aplicable la Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 40, en la medida que esta dispone los criterios que el foro revisor debe considerar para ejercer sabia y prudentemente su decisión de atender o no las controversias ante sí. *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 96-97 (2008). Véase, además, *BPPR v. SLG*

*Gómez-López*, 213 DPR 314 (2023); *Rivera et al. v. Arcos Dorados et al.*, supra; *Pueblo v. Rivera Montalvo*, 205 DPR 352, 372 (2020). La precitada Regla dispone lo siguiente:

El [T]ribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:

(A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

(B) Si la situación de hechos planteada es la más indicada para el análisis del problema.

(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E) Si la etapa de los procedimientos en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causa un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

4 LPRA Ap. XXII-B, R. 40.

Sin embargo, ninguno de los mencionados criterios es determinante, por sí solo, para este ejercicio y no constituye una lista exhaustiva. *García v. Padró*, 165 DPR 324, 335 esc. 15 (2005). El Tribunal Supremo también ha expresado que, de ordinario, el tribunal revisor "no intervendrá con el ejercicio de la discreción de los tribunales de instancia, salvo que se demuestre que hubo un craso abuso de discreción, o que el tribunal actuó con prejuicio o parcialidad, o que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que nuestra intervención en esa etapa evitará un perjuicio sustancial". *Zorniak Air Services v. Cessna Aircraft Co.*, 132 DPR 170, 181 (1992), citando

a *Lluch v. España Service Sta.*, 117 DPR 729, 745 (1986). Véase, además, *Rivera y otros v. Bco. Popular*, 152 DPR 140, 155 (2000).

A la luz de la normativa antes expuesta, procedemos a disponer del caso ante nuestra consideración.

### III

Sin lugar a duda, el recurso de *certiorari* es el vehículo procesal adecuado para procurar la revisión de la *Orden* recurrida. Ello, por tratarse de un dictamen emitido por el foro primario, en etapa post sentencia. Sin embargo, luego de evaluar el recurso ante nos a la luz de los criterios de la Regla 40 del Tribunal de Apelaciones, *supra*, resolvemos no ejercer nuestra discreción revisora para variar la determinación recurrida.

Luego de examinar la *Orden* recurrida no consideramos que el foro primario actuara con parcialidad, que incurriera en abuso de discreción o que emitiera un dictamen contrario a derecho. Así también, de un examen de las particularidades de este caso, tampoco surge que, de alguna manera, expedir el auto discrecional solicitado evite un fracaso a la justicia. En virtud de lo antes mencionado, y analizado el caso de autos a la luz de la totalidad de las circunstancias, consideramos que no procede nuestra intervención. Consecuentemente, procede denegar el auto discrecional solicitado.

### IV

Por los fundamentos que anteceden, denegamos la expedición del auto de *certiorari*.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones